COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
NO. 2-03-085-CV
 
 
IN THE INTEREST OF
D.C., A.C., AND H.M. 
 
   
------------
 
FROM THE 323RD 
DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
 
INTRODUCTION
        In 
this termination of parental rights case, M.M., the mother of D.C., A.C., and 
H.M., appeals the trial court’s judgment terminating her parental rights and 
the parental rights of Beau Unknown.[1]  In three 
issues, appellant complains that the citation by publication as to Beau Unknown 
was defective due to an incorrect answer date in the citation, due diligence was 
not used to locate Beau Unknown, and the evidence was insufficient to support 
the trial court’s decision to terminate appellant’s parental rights. We 
affirm.
FACTS
        Texas 
Department of Protective and Regulatory Services (TDPRS) investigated appellant 
in 1999 for allegations of physical abuse against A.C. and D.C. TDPRS first 
investigated appellant because D.C. was taken to the hospital with bruises and a 
genital rash. In response to a referral from D.C.’s hospital visit, TDPRS 
investigator Crystal Clay visited the children on June 2, 1999. They were dirty, 
but she did not observe any hazards in the home.
        Two 
months later, TDPRS received another referral alleging physical neglect and 
neglectful supervision. In response, TDPRS investigated appellant again after 
the police found D.C., who was two at the time, wandering down the street alone 
at three a.m. The police returned the child to her home and became seriously 
concerned when they saw the condition of the trailer where appellant and the 
children lived.
        Clay 
visited the trailer again and noted that it was very dirty and cluttered, with 
filthy, matted carpet and bits of food and trash lying around in reach of the 
children. Appellant promised Clay that she would put locks on the doors so that 
D.C. could not open them.
        When 
Clay returned four days later she found a padlock on the front door, which led 
her to believe appellant and her family had been evicted. Clay eventually found 
appellant and her children living at another trailer in the same trailer park. 
A.C., who was barefoot and clothed only in a dirty diaper, was outside by 
herself among a junkyard of broken toys, parts of a crib, a bike, and broken 
furniture. D.C. and A.C. were both covered in dirt and lice, both children had 
pus coming out of one of their ears, and their hair was matted.
        Inside 
the trailer, Clay discovered conditions that were dangerous for the children, 
such as a stereo connected to a car battery in reach of the children. 
Additionally, appellant admitted to having illegal drugs in the home and Clay 
found the drugs stored in a place where D.C. had access to them. During the 
visit, appellant threw something at Clay, who called the police. The officers on 
the scene arrested appellant for disturbing the peace. TDPRS removed the 
children and placed them in foster care. Appellant’s mother was named managing 
conservator of the children, but she allowed the children to live with 
appellant.
        TDPRS 
received another referral on January 17, 2002, alleging that J.C. and appellant 
were using drugs and had an unstable home situation, and that the children were 
physically abused. TDPRS investigator Monica Dixon had difficulty locating them, 
but finally found appellant, J.C., D.C., and A.C. on January 30, 2002, living at 
an apartment in North Richland Hills.[2]  The 
investigation that day revealed that both D.C. and A.C. were infested with lice, 
but otherwise appeared to be clean. Dixon talked to the children, and both told 
her that they had been punished by appellant and J.C., who spanked them with a 
spoon, a belt or a hand. A.C. had bruises on her body, but claimed that she got 
them from her sister when they were playing. Additionally, when Dixon asked the 
girls if they got enough to eat, D.C. told her that they did not eat at night. 
Dixson also spoke to appellant and J.C., who both admitted taking illegal drugs 
approximately two weeks before. Appellant told Dixon that J.C. had physically 
abused her in the past. D.C. told Dixon that she had seen her parents fighting.
        While 
this investigation was still open, another referral came in on March 31, 2002 
concerning appellant and her children. This time, TDPRS assigned the case to 
investigator Bron Gose. The referral alleged that appellant and J.C. physically 
abused D.C. and H.M. and that D.C. had large bruises on her bottom. The same 
night, the children were placed with J.M.'s mother pursuant to a voluntary TDPRS 
safety plan. The following day, Gose visited the children. He saw that D.C. had 
a six-inch bruise across her buttocks. Photographs of the bruises were admitted 
at trial.
        When 
Gose interviewed the children, D.C. stated that J.C. gave her the bruise because 
he was frustrated when she could not find his “pot.” A.C. corroborated the 
“pot” story, but the children were unable to elaborate further on their 
familiarity with “pot.” Previously, appellant and J.C. both admitted to 
taking illegal drugs. Appellant also admitted to habitually using drugs since 
she was seventeen years old. Both D.C. and A.C. stated that they were afraid of 
J.C. and that he hit appellant in the mouth. A.C. told Gose that J.C. had also 
punched H.M. in the stomach; however, there was no bruising or evidence of 
injury on H.M.
        Based 
upon his visit with the children, Gose feared for the children’s safety and 
determined that it was in their best interest to have them removed from 
appellant’s and J.C.’s care. Additionally, Gose feared that if the children 
were given to appellant’s mother she would just return them to appellant. On 
April 19, 2002, Gose attempted to meet with appellant and J.C. at their home, 
and they refused to let him in. Instead, they spoke outside in front of the 
residence.
        It 
is clear from the record that J.C. had a propensity for violence. The record 
also reflects that appellant allowed her children to be repeatedly exposed to 
J.C., whom she knew possessed a violent nature. Appellant herself admitted that 
J.C. physically abused her. D.C. told TDPRS that she had seen her parents 
fighting. Both D.C. and A.C. stated that J.C. hit appellant in the mouth. At 
least twice, J.C. had physically abused appellant, and his actions resulted in 
criminal convictions. A.C. matter-of-factly described one incident where J.C. 
struck appellant in the face, split her lip, and caused her to bleed profusely.
        On 
April 9, 2002, TDPRS filed a petition to terminate the parent-child relationship 
between three minor children, D.C., A.C., and H.M., and their mother, M.M., and 
fathers J.C. (father of D.C. and A.C.), and J.M. (alleged father of H.M.). 
During trial, DNA evidence showed that J.M., was not H.M.’s biological father 
and the court adjudicated him not to be the father of H.M.
        After 
DNA testing revealed that J.M. was not the father of H.M., TDPRS amended its 
petition to reflect that in addition to the above, it also sought to terminate 
the parental rights of Beau Unknown, or Bo Unknown, who was found to be the 
alleged biological father of H.M. The full, accurate name and whereabouts of the 
actual father of H.M. were unknown.
        The 
trial court held that appellant had knowingly placed her children in situations 
and engaged in conduct that endangered their physical or emotional well-being. 
The court also held that termination of the relationship was in the children’s 
best interest. Accordingly, the trial court ordered that appellant’s parental 
rights be terminated. Additionally, the court found that due diligence had been 
used to identify, locate, and serve Beau Unknown, but that he could not be 
located. Beau Unknown was served by publication, but failed to answer, or 
appear. The court appointed an attorney ad litem to represent Beau Unknown’s 
rights at trial. The court found that termination of Beau Unknown’s parental 
rights with regard to H.M. was in the child’s best interest. Consequently, the 
court also terminated the parent-child relationship between Beau Unknown and H.M.
DISCUSSION
        In 
her first two issues, appellant seeks reversal of the trial court’s 
termination of Beau Unknown’s parental rights. First, appellant argues that 
citation was defective as to Beau Unknown because the citation by publication 
stated an incorrect answer date. Second, appellant contends that reversal is 
required because due diligence was not used to locate and personally serve Beau 
Unknown.
        The 
family code provides for citation by publication as in other civil cases. Tex. Fam. Code Ann. § 102.010(a) 
(Vernon Supp. 2004). We agree with appellant that a party must be given until 
the Monday following the expiration of forty-two days from the date of 
publication to answer or appear before the court. See Tex. R. Civ. P. 114. Additionally, we 
agree with appellant that due diligence must be used to locate a missing 
biological parent in a termination proceeding before service by publication is 
proper.[3] See Tex. Fam. Code Ann. §§ 161.002(b)(2), 
161.107 (Vernon 2002); see also Tex. 
R. Civ. P. 109.
        Regardless 
of whether some evidence exists in this case to show that citation as to Beau 
Unknown may have been defective or that due diligence may not have been used to 
locate him,[4]  appellant lacks standing to 
challenge the termination of Beau Unknown’s parental rights. In re P.R., 
994 S.W.2d 411, 416-17 (Tex. App.—Fort Worth 1999, pet. dism’d w.o.j.) 
(holding that a mother lacked standing on appeal to challenge termination of 
alleged father’s parental rights), disapproved of on other grounds by In re 
J.F.C., 96 S.W.3d 256, 267 & n.39 (Tex. 2002); see also In re B.B., 
971 S.W.2d 160, 163 (Tex. App.—Beaumont 1998, pet. denied), disapproved of 
on other grounds by In re C.H., 89 S.W.3d 17, 26 (Tex. 2002) (holding 
that mother could not appeal the termination of the parental rights of father 
who did not appeal himself). On appeal, a party may not complain of errors that 
do not injuriously affect her or that merely affect the rights of others. See 
Buckholts ISD V. Glaser, 632 S.W.2d 146, 149-50 (Tex. 1982); Hanna v. 
Godwin, 876 S.W.2d 454, 457 & n.5 (Tex. App.—El Paso 1994, no writ) 
(listing cases reflecting this rule).
        Appellant 
has failed to explain how the termination of Beau Unknown’s parental rights 
would injure or affect her own.[5]  Additionally, 
Beau Unknown has not brought his own appeal. Therefore, appellant lacks standing 
on appeal to complain of errors affecting the rights of Beau Unknown. Because 
appellant lacks standing on appeal to challenge the termination of Beau 
Unknown’s parental rights, we overrule appellant’s first and second issues.
Legal and Factual Sufficiency
        In 
her third issue, appellant contends that the evidence is legally and factually 
insufficient to support the trial court’s determination that TDPRS established 
one or more of the grounds for termination alleged in its petition and that 
termination of appellant’s parental rights was in the children’s best 
interest.
        A 
parent’s rights to “the companionship, care, custody and management” of 
his or her children are constitutional interests “far more precious than any 
property right.” Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S. Ct. 
1388, 1397 (1982). “While parental rights are of constitutional magnitude, 
they are not absolute. Just as it is imperative for courts to recognize the 
constitutional underpinnings of the parent-child relationship, it is also 
essential that emotional and physical interests of the child not be sacrificed 
merely to preserve that right.” C.H., 89 S.W.3d at 26. In a termination 
case, the State seeks not just to limit parental rights but to end them 
permanently—to divest the parent and child of all legal rights, privileges, 
duties, and powers normally existing between them, except for the child’s 
right to inherit. TEX. FAM. CODE ANN. § 161.206(b) (Vernon Supp. 2004); Holick 
v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination 
proceedings and strictly construe involuntary termination statutes in favor of 
the parent. Holick, 685 S.W.2d at 20-21; In re D.T., 34 S.W.3d 
625, 630 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh’g).
        In 
proceedings to terminate the parent-child relationship brought under section 
161.001 of the family code, the petitioner must establish one or more of the 
acts or omissions enumerated under subdivision (1) of the statute and must also 
prove that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 
161.001 (Vernon 2002); Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 
1984); Swate v. Swate, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. 
denied). Both elements must be established; termination may not be based solely 
on the best interest of the child as determined by the trier of fact. Tex. 
Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).
        Termination 
of parental rights is a drastic remedy and is of such weight and gravity that 
due process requires the petitioner to justify termination by “clear and 
convincing evidence.” TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); In re G.M., 
596 S.W.2d 846, 847 (Tex. 1980). This intermediate standard falls between the 
preponderance standard of ordinary civil proceedings and the reasonable doubt 
standard of criminal proceedings. G.M., 596 S.W.2d at 847; D.T., 
34 S.W.3d at 630. It is defined as the “measure or degree of proof that will 
produce in the mind of the trier of fact a firm belief or conviction as to the 
truth of the allegations sought to be established.” Tex. Fam. Code Ann. § 101.007.
        The 
higher burden of proof in termination cases alters the appellate standard of 
legal sufficiency review. J.F.C., 96 S.W.3d at 265. The traditional 
no-evidence standard does not adequately protect the parent’s constitutional 
interests. Id. In reviewing the evidence for legal sufficiency in 
parental termination cases, we must determine “whether the evidence is such 
that a factfinder could reasonably form a firm belief or conviction” that the 
grounds for termination were proven. Id. at 265-66. We must review all 
the evidence in the light most favorable to the finding and judgment. Id. 
at 266. This means that we must assume that the factfinder resolved any disputed 
facts in favor of its finding if a reasonable factfinder could have done so. Id. 
We must also disregard all evidence that a reasonable factfinder could have 
disbelieved. Id. We must consider, however, undisputed evidence even if 
it does not support the finding. Id.
        The 
higher burden of proof in termination cases also alters the appellate standard 
of factual sufficiency review. C.H., 89 S.W.3d at 25. “[A] finding that 
must be based on clear and convincing evidence cannot be viewed on appeal the 
same as one that may be sustained on a mere preponderance.” Id. In 
considering whether the evidence of termination rises to the level of being 
clear and convincing, we must determine “whether the evidence is such that a 
factfinder could reasonably form a firm belief or conviction” that the grounds 
for termination were proven. Id. Our inquiry here is whether, on the 
entire record, a factfinder could reasonably form a firm conviction or belief 
that the parent violated one of the conduct provisions of section 161.001(1) and 
that the termination of the parent’s parental rights would be in the best 
interest of the child. Id. at 28.
        In 
its petition, the TDPRS requested that appellant’s parental rights be 
terminated because termination was in the children’s best interest and 
appellant had violated family code sections 160.001(D) and (E) by:
 
knowingly plac[ing] or 
knowingly allow[ing] the children to remain in conditions or surroundings [that] 
endanger[ed] the physical or emotional well-being of the children;
engag[ing] in conduct or 
knowingly plac[ing] the children with persons who engaged in conduct [that] 
endangers the physical or emotional well-being of the children;

The trial court terminated 
appellant’s rights and found that appellant had committed the acts or 
omissions alleged in TDPRS’s petition.
ANALYSIS
        We 
first review the evidence supporting the trial court’s findings that appellant 
knowingly placed her children or knowingly allowed them to remain in conditions 
or surroundings that endangered their physical or emotional well-being and that 
appellant engaged in conduct, or knowingly placed her children with others who 
engaged in conduct, that endangered the physical or emotional well-being of the 
children.See Tex. Fam. Code Ann. § 
161.001(1)(D), (E). Subsections (D) and (E) differ in one respect: the source of 
the physical or emotional endangerment to the child. In re B.S.T., 977 
S.W.2d 481, 484 (Tex. App.—Houston [14th Dist.] 1998, no pet.), disapproved 
of on other grounds by C.H., 89 S.W.3d at 25. Under subsection (D), the 
environment, including the environment produced by the parent's conduct, is the 
source of endangerment to the child. W.S., 899 S.W.2d at 776. Under 
subsection (E), the danger to the child is a result of the parent’s conduct, 
including the parent's actions or omissions or failures to act. Id. at 
778; In re R.D., 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. 
denied); Dupree v. Tex. Dep’t of Protective & Regulatory Servs., 
907 S.W.2d 81, 83-84 (Tex. App.—Dallas 1995, no writ). However, termination 
under section 161.001(1)(E) requires more than a single parental act or 
omission; a voluntary, deliberate, and conscious “course of conduct” by the 
parent is required. In re K.M.M., 993 S.W.2d 225, 228 (Tex. 
App.—Eastland 1999, no pet.); In re J.N.R., 982 S.W.2d 137, 142 
(Tex. App.—Houston [1st Dist.] 1998, no pet.), disapproved of on 
other grounds by C.H., 89 S.W.3d at 24-25. Both subsections require 
knowledge on the part of the parent. J.N.R., 982 S.W.2d at 142.
        Abusive 
or violent conduct by a parent or other resident of a child's home may produce 
an environment that endangers the physical or emotional well-being of a child. See 
W.S., 899 S.W.2d at 776-77; Ziegler v. Tarrant County Child Welfare Unit, 
680 S.W.2d 674, 678-79 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.). Illegal 
drug use and drug-related criminal activity by parents and caregivers also 
supports the conclusion that the children’s surroundings endangered their 
physical or emotional well-being. See In re S.D., 980 S.W.2d 758, 763 
(Tex. App.—San Antonio 1998, pet. denied).
        The 
evidence concerning these two statutory grounds for termination is interrelated, 
thus, we consolidate our review of the evidence supporting these findings. See 
id. at 762; In re B.R., 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, 
writ denied) (both recognizing link between parent’s conduct and child's 
conditions and surroundings). The record contains ample evidence to support the 
findings under subsection (D) (environmental endangerment) and subsection (E) 
(course of conduct endangerment of the physical or emotional well-being of the 
children). The evidence of J.C.’s violence, abuse of appellant and the 
children, illegal drug use, and neglect, and the evidence of appellant’s 
acquiescence to the children’s exposure to drug use and family violence 
constitutes more than a scintilla of evidence to support the trial court’s 
finding that appellant knowingly placed or knowingly allowed her children to 
remain in conditions or surroundings that endangered their physical or emotional 
well-being. Additionally, appellant’s admitted continued drug abuse, her 
knowledge of J.C.’s violent tendencies, and neglect of her children constitute 
sufficient evidence to support the finding that appellant engaged in conduct or 
knowingly placed the children with persons who engaged in conduct that 
endangered their physical or emotional well-being. We hold that the evidence is 
legally and factually sufficient to support the first prong of the trial 
court’s findings under family code section 161.001(1) (D) and (E).
Best Interest
        In 
addition to presenting sufficient evidence under sections (D) and (E), the 
termination of the parent-child relationship must also be supported by evidence 
to show that it is in the best interest of the children. Tex. Fam. Code Ann. § 161.001(2). 
Nonexclusive factors that the trier of fact in a termination case may use in 
determining the best interest of the child include:
        
(1)the desires of the child;
 
        (2)    the 
emotional and physical needs of the child now and in the future;
 
        (3)    the 
emotional and physical danger to the child now and in the future;
 
        (4)    the 
parental abilities of the individuals seeking custody;
 
        (5)    the 
programs available to assist these individuals to promote the best interest of 
the child;
 
        (6)    the 
plans for the child by these individuals or by the agency seeking custody;
 
        (7)    the 
stability of the home or proposed placement;
 
        (8)    the 
acts or omissions of the parent which may indicate that the existing 
parent-child relationship is not a proper one; and
 
(9)any excuse for the acts or 
omissions of the parent.
Holley v. Adams, 544 
S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive; some listed 
factors may be inapplicable to some cases; other 1factors not on the list may 
also be considered when appropriate. C.H., 89 S.W.3d at 27. Furthermore, 
undisputed evidence of just one factor may be sufficient in a particular case to 
support a finding that termination is in the best interest of the children. Id. 
On the other hand, the presence of scant evidence relevant to each Holley 
factor will not support such a finding. Id.
        Appellant 
contends that the evidence was legally and factually insufficient to support the 
trial court’s conclusion that termination of her parental rights was in the 
best interest of the children. She contends that little or no evidence was 
presented at trial regarding: (1) the current and future desires, or emotional 
and physical needs of the children; (2) the current and future emotional and 
physical dangers to the children; (3) the parent’s acts or omissions that may 
be indicative of an unhealthy or improper parent-child relationship; (4) any 
excuses for that parent’s acts or omissions; (5) the parental abilities of the 
persons seeking custody; and (6) the stability of the home or proposed 
placement. Moreover, she contends that several of these factors contradict the 
finding that termination is in the children’s best interest. Specifically, 
appellant focuses on factors six and seven and argues that TDPRS has not secured 
an adoption commitment from the foster parents and that TDRPS has acted in a 
contradictory manner by indicating that it might allow J.M.'s mother to adopt 
the children. She argues that placement of the children with J.M.'s mother is 
not feasible since the children were already removed from her care due to 
“disruptions.”
        The 
State argues that ample grounds exist to support the finding that termination is 
in the children’s best interest. The State points to the testimony of Dr. 
Williams, who stated that it was critical that appellant cease using drugs in 
order to be an effective parent. Williams stated that he would only recommend 
reunification of this family if appellant fully complied with the drug 
rehabilitation program he recommenced for her. Appellant waited to begin the 
drug treatment program until the day she appeared at the trial court. She 
testified that she was checking into the drug treatment program that day “[t]o 
look good to you all [the court] so you wouldn’t be questioning me on why I 
didn’t do it.” From this testimony, the trial court, acting as the trier of 
fact and arbiter of witness credibility, was not required to find her testimony 
or commitment to drug rehabilitation credible. See In re A.C., 758 
S.W.2d 390, 394 (Tex. App.—Fort Worth 1988, no writ). Additionally, the 
evidence that appellant failed to comply with the requirements of the service 
plans designed for her and that she had not attended to her children’s 
educational and health needs is additional evidence to support the finding that 
termination was in the children’s best interest.[6]  
Overall, appellant’s home life was unstable as evidenced by the fact that in 
the year preceding trial, appellant had moved eight times.
        Once 
in foster care, the children’s development improved dramatically. After visits 
with appellant and J.C., however, the children’s behavior regressed and was 
uncontrollable. Investigators noted that the children seemed happier in foster 
care.
        Taken 
together, appellant’s inability to provide a stable home, remain gainfully 
employed, and her failure to comply with the service plans and successfully 
complete drug treatment all support the trial court’s finding that termination 
was in the children’s best interest. Accordingly, we hold that the evidence 
was legally and factually sufficient to support the termination of appellant’s 
parental rights.
        Having 
overruled all of appellant’s issues, we affirm the trial court’s order 
terminating appellant’s parental rights regarding A.C., D.C., and H.M.
   
   
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
 
  
PANEL A:   CAYCE, 
C.J.; LIVINGSTON and WALKER, JJ.
 
DELIVERED: January 29, 2004


NOTES
1. At trial, 
J.C., the father of D.C. and A.C., voluntarily relinquished his parental rights 
to both of his children. DNA testing revealed that J.M., the alleged father of 
H.M., was not the father of H.M. An unknown man, referred to as Beau Unknown, 
was the actual father of H.M.
2. H.M. had 
been born by this time, but was staying with J.M.’s mother, on the day Dixon 
visited. H.M. stayed at J.M.'s mother's house on and off. Additionally, although 
appellant’s mother, had been appointed permanent managing conservator of D.C. 
and A.C. in a prior TDPRS case, she usually left the children in the care of 
appellant and J.C.
3. Section 
161.107(b), (c) states:
(b) If a parent of the child 
has not been personally served in a suit in which the Department of Protective 
and Regulatory Services seeks termination, the department must make a diligent 
effort to locate that parent.
c) If a parent has not been 
personally served and cannot be located, the department shall make a diligent 
effort to locate a relative of the missing parent to give the relative an 
opportunity to request appointment as the child's managing conservator.
Tex. Fam. Code Ann. § 161.107(b), (c).
4. No one 
attempted to find Beau Unknown even though appellant testified that she thought 
his name was Beau Purdham or Burdham and stated that she had given this 
information to the TDPRS worker. J.C. testified that Beau Unknown was a friend 
of his brother who lived in Odessa or Midland, Texas and worked at the super 
Wal-Mart. Beau and J.C.’s brother had both worked at the Wal-Mart in Lake 
Worth in 2000. During J.C.’s testimony, he stated that he last heard that Beau 
Unknown was in Alabama.
5. Appellant 
does not argue that Beau Unknown was a necessary party and that defective 
service of citation on him therefore rendered the trial court’s order void. See 
Berry v. City of Fort Worth, 124 S.W.2d 842, 846 (Tex. 1939) (holding that 
trial court lacks jurisdiction over a party who is not served by citation); see 
also Simms Oil Co. v. Butcher, 55 S.W.2d 192, 194 (Tex. Civ. 
App.—Dallas 1932, writ dism’d) (holding that judgment can be void if the 
trial court lacks jurisdiction over a necessary party). We note that Beau 
Unknown was represented by an attorney ad litem who appeared on his behalf and 
questioned witnesses at trial, rendering this argument inapplicable.
6. D.C. had to 
repeat kindergarten because appellant had not enrolled her in school while D.C. 
was in her care. A.C. had previously been diagnosed with cataracts, which could 
have permanently damaged her eyesight without treatment, but appellant delayed 
treating the condition until August 2002 after TDPRS got involved in the case.